UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-40031-TSH |
| | ) | |
| JAMES LEVIN and JACLYN | ) | |
| SUTCIVNI, | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION REGARDING DEFENDANT JAMES LEVIN'S
MOTION TO  MODIFY CONDITIONS OF RELEASE
(Docket No. 29)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

On August 26, 2016, James Levin ("Levin") and Jacklyn Sutcivni (formerly known as

Jacqueline Vachon-Jackson) (" Sutcivni"), were indicted for Conspiracy to Commit Wire Fraud

in violation of 18 U.S.C. § 1349 (Count One); Wire Fraud in violation of 18 U.S.C. § 1343

(Count Two); Conspiracy to Defraud the United States in violation of 18 U.S.C. § 286 (Count

Three); and False Fictitious or Fraudulent Claims and Aiding and Abetting in violation of 18

U.S.C. §287 and 2 (Count Four).  Levin had an initial appearance and was arraigned before

District Judge Timothy S. Hillman on August 25, 2016.  Sutcivni had an initial appearance and

was arraigned before Judge Hillman on August 26, 2016.  Judge Hillman entered conditions of

release as to each of the defendants at the initial appearances.  As a condition of release, each

defendant was ordered, among other things, to "avoid all contact, directly or indirectly, with any

persons who are or who may become a victim or potential witness in the subject investigation or

prosecution, including but not limited to: Co-defendants" (Dkt. No. 17 at 2; Dkt. No. 24 at 2).

1

On September 8, 2016, Levine filed Defendant's Motion to Modify Conditions of Release (Dkt. No. 29) ("Defendant's Motion") challenging the condition set forth above. Sutcivni joins in Defendant's Motion on a limited basis.  The government opposes Defendant's Motion (Dkt. No. 34).

The case is referred to me for pre-trial management and the presiding judge has referred Defendant's Motion to me for a ruling.  The parties appeared before me at hearing on October 12, 2016 and Defendant's Motion is ripe for decision.  To preserve the parties' right to de novo review of conditions of release, *see* 18 U.S.C. § 3145(a)(2), I am issuing this ruling as a Report and Recommendation.  For the reasons explained below, I recommend that the challenged condition of pretrial release be modified to the limited extent set forth below.

II.    DISCUSSION

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 et seq., provides that if the judicial officer presiding over a defendant's initial appearance finds that release on personal recognizance or an unsecured bond will not reasonably assure the appearance of the defendant as required, or will endanger the safety of any other person or the community, but that there are conditions of release that will meet these goals, then the judicial officer shall release the person subject to the least restrictive condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of other persons and the community.  *See* 18 U.S.C. § 3142(c).  Among other conditions, the Bail Reform Act authorizes a judicial officer to include as a condition of pretrial release that a defendant "avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense."  18 U.S.C. § 3142(c)(B)(v).  Factors that a court considers in determining whether to detain or release a defendant prior to trial, and, if a defendant is released, what conditions to impose, are

found in 18 U.S.C. § 3142(g).  They include the nature and circumstances of the charged offense; the history and characteristics of the person charged with the offense, including the person's character and ties to the community; and the nature and seriousness of the danger to any person or the community.

Defendant's Motion challenges the condition that requires him to avoid all contact, directly or indirectly, with any person who is or who may become a potential witness in the subject investigation or prosecution, including but not limited to co-defendants (Dkt. No. 17 at 2).  Out of an abundance of caution, as the government has not identified a list of potential witnesses, Levin seeks leave to communicate with:

- Christine Carey, Esq., whom Levin describes as a former law partner and someone with whom he continues to provide "joint legal services to clients";

- Laird Pendleton, whom Levin describes as a client of his and someone with whom Levin also "has an active financial loan";

- Dave Roy, who, according to Levin, previously assisted with maintenance at one of the properties that is the subject of the indictment and who provides handyman and maintenance services at the house where Levin is living;

- Curtis Mueller, whom Levin describes as a close personal friend; and

- Shayna and Nichole Jackson, who, according to Levin, consult him from time to time on minor legal matters (Dkt. No. 29 at 2-3).

Levin offers that if his motion is allowed as to some or all of these individuals, he will not communicate with any such individual about "the instant matter" (*id.* at 3).  He further requests that he be allowed to have direct and unmonitored contact with Ms. Sutcivni with the caveat that communications between them that are about the charges pending against them will only be

made in the presence of their counsel.  Sutcivni joins in Levin's request that the defendants be

permitted to have direct and unmonitored contact with the understanding that they will not

communicate about the pending charges except in the presence of their attorneys (Dkt. No. 29 at

4).

With a limited exception, the government opposes Defendant's Motion.  The government

contends that direct, unmonitored contact between Levin and potential witnesses, including

Sutcivni, poses an inherent risk of undue influence and, possibly, obstruction of justice.  The

government indicates the following as to the individuals identified by Levin:

- Christine Carey, Esq., assisted Levin with the redevelopment project at 5 May Street, Worcester ("the Property"), that is the subject of the indictment and purported to serve as legal counsel in connection with Sutcivni's purchase of a condominium from Curtis Mueller.  The government expects that she may be a witness.

- Mr. Mueller was Levin's business partner when Levin acquired the Property and is the individual from whom Sutcivni purportedly purchased a condominium while she was overseeing the redevelopment of the Property with federal funds.

- Without further explanation, the government represents that Laird Pendleton is a potential witness in the case.[1]

- Dave Roy was employed by one of Levin's companies that was involved in the project that is the subject of the indictment and may be a witness.

---

[1] Levin states that he has worked as Mr. Pendleton's counsel and business advisor for approximately fifteen years and that Mr. Pendleton frequently funds Levin's real estate projects. According to Levin, he "has an active financial loan with Mr. Pendleton which requires [Levin] to speak with [Mr. Pendleton] no less than once per month to provide updates regarding the loan's status and related debt service" (Dkt. No. 29 at 2).

- Shayna and Nichole Jackson are Sutcivni's daughters. While the government does not represent that either is a likely witness, the government is concerned that either could serve as a means of indirect contact between Levin and Sutcivni.

As to communications between Levin and Sutcivni, counsel for Levin represented at the October 12, 2016 hearing that the codefendants have entered into a formal joint defense agreement. The government does not object to communications between the codefendants in the presence of counsel as long as those communications relate exclusively to the preparation of defense in this case, but objects to any contact between them, direct or indirect, on any topic, outside of the presence of counsel (Dkt. No. 34 at 6).

The court finds that Levin's dominant role in real estate development projects, his training as a lawyer, and his alleged participation in a crime based on fraud and dishonesty warrant the imposition of pretrial restrictions on his communications with his codefendant and potential witnesses in this case. *See United States v. Blankenship*, Criminal Action No. 5:14-cr-00244, 2015 WL 1565774, at *7 (S.D.W. Va. April 8, 2015) (in case charging fraud and violations of mine health and safety standards, government's interest in witness safety and integrity of court proceedings justified post-indictment pretrial restrictions on defendant's communications with alleged victims and potential witnesses). Nonetheless, to safeguard Levin's ability to prepare his defense, and to protect existing non-party attorney-client relationships, the court recommends the following amendments to the challenged condition governing Levin's communications with his codefendant and potential witnesses.

First, the challenged condition should be amended to provide that Levin may have communications with potential witnesses in the case indirectly *through counsel* and that the codefendants may communicate in their attorneys' presence for purposes of preparing their

defense.  Specifically, the court recommends that condition (k) be amended to provide:  "The Defendant shall . . . (k) avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to Co-defendants, except through counsel for purposes of preparing a defense. The codefendants may communicate directly with each other in the presence of counsel solely for purposes of preparing their defense."

Second, the court recommends that communications with attorney Christine Carey be excluded from the ban.  The government has shown that Ms. Carey is a potential witness in the case.  However, at the October 12, 2016 hearing, counsel for Ms. Carey stated that she and Levin are joint counsel to third parties in discrete, identifiable legal matters unrelated to the current prosecution that require her to communicate directly with Levin, and that she represents Levin in a matter unrelated to the criminal charges now pending against him.  The court is not persuaded that the government's interests in limiting Levin's communications with potential witnesses outweigh those of third parties, whose legal representation may be compromised if Levin is not free to communicate with Ms. Carey directly on a confidential basis.  *See* Mass. Sup. Ct. Rule 3:07, Rule 1.6 (2015) (establishing attorneys' confidentiality obligations as to client information).  Accordingly, the court recommends that Levin be permitted to communicate directly and on a confidential basis with Ms. Carey exclusively for purposes of providing legal services to third parties to the extent such representation is unrelated to the instant prosecution. Levin should also be permitted to communicate with Ms. Carey for purposes of obtaining legal advice for himself about a personal matter unrelated to the instant prosecution.  Ms. Carey should file a list with the court, under seal and ex parte, identifying the individuals whom she and Levin jointly represent and about whose legal affairs she will be communicating with

Levin.[2]  Ms. Carey should not open new matters requiring joint representation with Levin, and should be precluded from communicating with Levin about any aspect of this case or the Property.

The court recommends that Levin's quest to communicate freely with Messrs. Mueller, Pendleton, and Roy be denied.  Levin seeks leave for this contact because, in varying capacities, he has had prior business dealings with each of these individuals (Dkt. No. 29).  The government represents that each of these individuals is a potential witness in this case, and Levin's business dealings will be under scrutiny in this case.  In the court's view, Levin's history of involvement in real estate development, his alleged role in dishonest activity, his resources and contacts, and his motive to assert undue influence over potential witness testimony support the condition that Levin be precluded from communication with these individuals other than indirectly, through counsel, for purposes of preparing a legal defense.

The risk of obstruction or undue influence is particularly acute with respect to communications between Levin and Sutcivni.  Accordingly, the court recommends against permitting direct, unmonitored communication between them about matters unrelated to the instant case, and between Levin and Sutcivni's daughters.

As amended, the challenged condition does not pose an unacceptable burden on the preparation of Levin's defense.  Further, as amended, and with the exception for Ms. Carey noted above, the condition is reasonable and tailored to be the least restrictive means of protecting the integrity of these proceedings.  *See Blankenship*, 2015 WL 1565774, at *6-7.

III.    CONCLUSION

---

[2] At the hearing, through counsel, Ms. Carey indicated a willingness to file such a list under seal and ex parte.

For the foregoing reasons, the court recommends that Defendant's Motion to Modify Conditions of Release be granted in part and denied in part.[3]  The court further recommends that: (a) the challenged condition of pre-trial release be modified to provide as follows:  "The Defendant shall . . . (k) avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to Co-defendants, except through counsel for purposes of preparing a defense. The codefendants may communicate directly with each other in the presence of counsel solely for purposes of preparing their defense"; and (b) notwithstanding her role as a potential witness, the challenged condition not apply to communications with Christine Carey, Esq., who, as a condition of engaging in direct, unmonitored communications with Levin under the terms set forth in this Report and Recommendation, should file under seal and on an ex parte basis, a list of the individuals for whom she and Levin are joint counsel and on whose behalf she needs to engage in direct, confidential communications with Levin.

DATED: October 26, 2016                    /s/ Katherine A. Robertson
                                           KATHERINE A. ROBERTSON
                                           United States Magistrate Judge

---

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.